**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-60572
_____

JEFF PAYNE,

 Plaintiff-Appellant,

versus

MARTIN SPROCKET & GEAR, INC., also known as
Martin Conveyer Corporation,

 Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
(3:95-CV-481LN)

May 29, 1998

Before DAVIS, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Jeff Payne appeals from the district court's grant of summary judgment to Martin Sprocket & Gear, Inc. ("Martin Sprocket"). The district court based its decision solely on the determination that Payne had failed to demonstrate the existence of a genuine issue of material fact as to whether Martin Sprocket manufactured or sold the allegedly defective machinery allegedly responsible for Payne's injuries. We reverse and remand.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

At all times relevant to this suit, Payne was employed as an electrician by McCarty Farms, Inc ("McCarty"). On June 19, 1992, while working at McCarty's chicken processing plant in Forest, Mississippi ("Forest plant"),[1] Payne was climbing over an ice conveyer system to reach an electrical motor that had caught fire when his foot came in contact with a moving auger, or screw. The cover over the trough housing the auger slipped out of place, and Payne's leg was pulled into the auger, resulting in a complete amputation of that leg at the hip. Payne sued Martin Sprocket, alleging that the covers on the conveyer at the time of the accident were negligently designed and/or defective in that they were not properly attached and did not properly protect those working in and around the machine from coming into contact with the moving auger.

Following almost two years of discovery, Martin Sprocket moved for summary judgment, alleging that Payne could not produce sufficient evidence to create a genuine issue of material fact as to whether its predecessor, Fort Worth Steel & Machinery Co. ("Fort Worth Steel"), had in fact manufactured the allegedly defective

---

[1] From 1976 to 1994, McCarty owned and ran the Forest plant; prior to 1976, the plant was run by Gaddis Packing, Inc. ("Gaddis"). In 1994, Tyson Foods ("Tyson") bought McCarty and took control of the Forest plant. Despite these changes in ownership, the physical layout of the Forest plant has not changed since its construction in the early 1970s.

portion of the conveyer system.  The district court granted Martin Sprocket's motion, and Payne filed this timely appeal.

II

We review a grant of summary judgment *de novo*.  *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact, but once that burden is met, the nonmoving party must set forth "specific facts" demonstrating that there is a genuine issue for trial.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  Thus, "[w]e resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.

Martin Sprocket alleges that Payne cannot prove that its predecessor Fort Worth Steel produced or sold the allegedly defective covers.  According to Martin Sprocket, the only documentary evidence indicating a sale from Fort Worth Steel to the owners of the Forest plant is a purchase order stating that Gaddis ordered a conveyer system with flanged covers for use at the Forest plant in 1973——whereas James Mitchell, a former maintenance supervisor at the Forest plant, has testified that the covers on

-3-

the conveyer at the time of Payne's accident were flat.[2]  Payne's response consists primarily of an affidavit from Mitchell, stating that in 1973, Mitchell was personally involved in the installation of that portion of the auger system including the site of Payne's accident, and that Mitchell specifically remembers the parts of the system coming in boxes labeled "Ft. Worth Steel and Machinery," with operating manuals and stickers also bearing that name. Although Mitchell admits that certain portions of the system may have been replaced over time, Mitchell's affidavit asserts that the "auger covers and trough were not materially changed before the accident involving Jeffrey Payne."  In addition, Payne attempts to refute Martin Sprocket's evidence by noting that (1) the 1973 purchase order reflects only what Gaddis requested, not what Fort Worth Steel actually delivered, (2) Martin Sprocket can produce no witnesses with any personal knowledge of what was delivered, and (3) Martin Sprocket does not deny that it produced flat covers in 1973.[3]

---

[2] Martin Sprocket also relies on the affidavit testimony of Billy C. Rodgers, the Manufacturing Manager of the Conveyer Division of Martin Sprocket. Rodgers' affidavit sets out numerous alleged differences between the conveyer components found at the accident site and those manufactured by Fort Worth Steel. Rodgers' also notes many differences between those parts listed on the 1973 purchase order and accompanying documents and the conveyer components found at the site of the accident.  Except as noted above, none of these differences concern the particular product alleged in this suit to be defective, *i.e.*, the cover over the trough housing the auger.

[3] Neither party has been able to examine the actual covers at the scene of the accident because the managers at the Forest plant

Martin Sprocket seeks to refute the import of Mitchell's testimony by noting that Mitchell himself admitted at his deposition that although he did not remember replacing any of the covers on the conveyer system generally, he was "almost sure that we did." Taken in context, this statement may raise questions as to Mitchell's precise memory of all repairs and replacements done to the conveyer system at the Forest plant. It does not indicate, however, that Mitchell is any less confident that from the date of installation in 1973 until the date of Payne's accident in 1992, Forest plant personnel left the covers at the site of Payne's accident in place. Indeed, during that same deposition, shortly before making the comments noted above, Mitchell was asked: "Is it your testimony that between 1973 or '74 when [the conveyer line] was installed up to 1993, that those covers that were originally shipped remained in place on the auger, the ice auger system?" Mitchell responded: "Yes, sir."

In light of this unequivocal assertion, based on Mitchell's personal knowledge, we find that a genuine issue of material fact exists as to whether Martin Sprocket's predecessor Fort Worth Steel manufactured and/or sold the allegedly defective cover allegedly responsible for Payne's injury. *See, e.g., International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) ("[E]ven if the moving party comes forward with an abundance

replaced and discarded them shortly after Payne's injury.

-5-

of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor.").

The district court's grant of summary judgment to Martin Sprocket is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.